UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA COLON-LOCKHART,

No. 14-14336

    Plaintiff,

District Judge Victoria A. Roberts
Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Anita Colon-Lockhart ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Dock. #17] be GRANTED and that Plaintiff's motion [Dock. #13] be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on July 30, 2012, alleging disability as of February 7, 2012 (Tr. 131). Upon denial of the claim, Plaintiff requested an administrative hearing, held on June 25, 2013 in Mt. Pleasant, MI (Tr. 35). Administrative Law Judge ("ALJ") Kendra S.

-1-

Kleber presided (Tr. 35). Plaintiff, represented by attorney James O'Neill, III, testified (Tr. 43-63), as did Vocational Expert ("VE") Mark A. Richards (Tr. 63-74). On August 9, 2013, ALJ Kleber found that Plaintiff was not disabled (Tr. 18-30). On September 13, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on November 12, 2014.

## II.   BACKGROUND FACTS

Plaintiff, born June 26, 1960, was 53 at the time of the administrative decision (Tr. 30, 131). She obtained a GED, and in 2004 became a certified nursing assistant ("CNA") (Tr. 65, 152). She worked previously as an assistant manager of a restaurant, a CNA, and a production worker (Tr. 152). She alleges disability as a result of arthritis, and back, neck, and knee pain (Tr. 151).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She had not worked since February, 2012 (Tr. 43). Her principle duties as a CNA consisted of transporting patients to and from surgery (Tr. 44). The job required her to lift over 100 pounds (Tr. 45). During and before 2003, she was a production worker, which required the lifting of up to 40 pounds at a time (Tr. 46). She was currently unable to work due to back, shoulder, elbow, hand, feet, leg, and knee pain (Tr. 49). Medication dulled but did not eliminate the body pain (Tr. 49). She stood about 5' 3" and weighed 240 pounds (Tr. 52). As a result of Carpal Tunnel Syndrome ("CTS"), she wore wrist splints (Tr. 52). Her

-2-

right wrist was worse than the left (Tr. 52).

Plaintiff coped with sleep disturbances with medication and the use of a recliner (Tr. 53).  Upon arising on a typical day, she would sit in the recliner, take a hot shower, take medication, eat breakfast, use a stationary bike for up to 15 minutes, then use a recliner (Tr. 53-54).  She was unable to wash dishes for more than 15 minutes at a time (Tr. 54).  In addition to medication, she used an "Icy Hot" patch on her back (Tr. 56).  She performed housework with the help of her sister (Tr. 56).  She experienced problems pushing the accelerator while driving (Tr. 56).  She had gained around 20 pounds since becoming disabled  (Tr. 56-57).

In response to questioning by her attorney, Plaintiff testified that she experienced the medication side effect of dizziness and blurred vision (Tr. 57).  She reported that she could prepare light meals (Tr. 58).  She alleged that she was unable to sit for more than 20 minutes at one time or stand or walk for more than 15 (Tr. 58-59).  She testified that she required three to four naps each day due to nighttime sleep disturbances,(Tr. 59).  She alleged concentrational problems as a result of medication side effects, including confusion and tiredness (Tr. 60).  Due to hand and wrist problems, she was unable to lift more than a gallon of milk (Tr. 61).

### B.  Medical Records

### 1.  Treating Records

In February, 2012, Plaintiff sought emergency treatment for back pain (Tr. 216).  A

CT of the lumbar spine showed bulging at L3-L4 and L4-L5 (Tr. 218).  She was able to walk without assistance (Tr. 221).   An MRI of the lumbar spine showed mild bulging "without evidence of herniation" at L3-L4 and L4-L5  (Tr. 225).  An EMG of the lower extremities and an MRI of the cervical spine were unremarkable (Tr. 211-214, 226).  The following month, Satya D. Patel, M.D. noted Plaintiff's reports of radiating low back pain (Tr. 250). In April, 2012, orthopedic surgeon Akbar Waheen, M.D. examined Plaintiff, noting complaints of neck, shoulder, and elbow pain (Tr. 209).  She reported that recent chiropractic treatment had made her condition worse (Tr. 209).  Dr. Waheen noted that Plaintiff appeared comfortable (Tr. 209).  He noted "mild" degenerative disc disease of the lumbar spine (Tr. 210).  An EMG of the lower extremities was normal (Tr. 254). A CT of the pelvis was also unremarkable (Tr. 229).  Dr. Waheen opined that he did not "have much more to offer" Plaintiff (Tr. 313).   In May, 2012, Mohammad Sohail Jilani, M.D. performed a physiatry evaluation, noting "tender points in all four quadrants" and in all joints with range of motion limitations (Tr. 269).   Dr. Jilani noted that the multiple tender points were "suggestive for fibromyalgia" (Tr. 270).  He referred Plaintiff for a rheumatology evaluation and physical therapy and recommended swimming and the use of heat and ice packs (Tr. 270).  (Tr. 299). Dr. Jilani issued a work release through June 18, 2012 and ultimately through September 19, 2012 (Tr. 289-292).  In June, 2012, Dr. Jilani noted full grip strength and no acute distress (Tr. 266).

        In July, 2012 rheumatologist Carlos Diola, M.D. examined Plaintiff, noting her

complaints of lower back and leg pain (Tr. 231). Dr. Diola did not observe joint swelling (Tr. 242). He noted Dr. Jilani's diagnosis of fibromyalgia (Tr. 231, 243). Dr Diola recommended exercise and a "low dose" steroid (Tr. 233). Plaintiff reported that she was independent in daily activities but was currently applying for disability (Tr. 242). The same month, Dr. Jilani advised Plaintiff to lose weight, noting that she was not in acute distress, had not yet started swimming, had canceled an appointment with a sleep specialist, and had not yet filled a previous prescription for Neurontin (Tr. (Tr. 264). In August, 2012, Plaintiff reiterated that she did not want to see a sleep specialist (Tr. 261). Dr. Jilani noted that she had not filled the Neurontin prescription but had begun swimming (Tr. 261). She demonstrated a normal gait and full strength in all extremities (Tr. 262). The same month, Dr. Diola ruled out a rheumatological condition (Tr. 316).

In September, 2012, Dr. Jilani remarked that he was going to "keep [Plaintiff] off work" in response to her report that she could no longer do her job (Tr. 323). In October, 2012 Jose Mari G. Jarado conducted a "second opinion" evaluation of the fibromyalgia related symptoms (Tr. 317). He noted that Plaintiff injured her back in February, 2012 while moving a 500-pound patient (Tr. 317). He noted that Plaintiff asked if she could go back to work (Tr. 317). She reported that she could lift 10 pounds occasionally, sit for up to 30 minutes at a time, stand for 10 minutes, and walk for 15 (Tr. 318). She noted only mild relief from medication (Tr. 318). The same month, Dr. Jilani noted that Plaintiff was applying for Workers' Compensation for a work-related injury (Tr. 325).

In April, 2013, Dr. Diola examined Plaintiff, noting her complaints of multiple tender points, and right knee buckling (Tr. 331). Plaintiff declined his recommendation for a steroid injection to the right knee (Tr. 332). The following month, Dr. Jilani noted that Plaintiff reported continued fibromyalgia symptoms, neck and low back pain, and paresthesia (Tr. 337). The following month, he issued the work restrictions of "no lifting of more than 10 pounds occasionally" with avoidance of "pushing, pulling, walking long distances, and repetitive work (Tr. 341). A June, 2013 EMG of the upper extremities showed mild left median neuropathy (Tr. 343). The same month, Dr. Patel composed a letter on behalf of Plaintiff's disability claim, finding that she was unable to perform any work duties due to pain "flare ups" two to three times a week lasting between two to three days (Tr. 350).

## 2. Consultative and Non-Examining Sources

In December, 2012, Ramona Minnis, M.D. performed a non-examining review of the evidence on behalf of the SSA, affirming an October, 2012 determination (Tr. 76-84) by a Single Decision Maker ("SDM") that Plaintiff was capable of a "posturally restricted" range of exertionally light work (Tr. 315).

## C. VE Testimony

VE Mark A. Richards classified Plaintiff's former job as a CNA as semiskilled and exertionally medium (very heavy as performed); and job as a bakery work as unskilled and medium (heavy as performed)[1] (Tr. 64-65). The ALJ posed the following question,

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds

describing a hypothetical individual of Plaintiff's age, education, and work experience,:

> [S]he is able to lift 10 pounds, she's able to stand or walk for six hours out of eight or to sit for six hours out of eight provided she's able to change position at will. . . . . And by that I mean at the workstation. I don't mean unscheduled breaks. The work she can perform should not involve pushing, or pulling, or [more than occasional] hand motion. Work does not involve climbing ladders, or scaffolds, or more than occasional climbing of stairs or ramps. The work does not involve commercial driving or exposure to hazards such as unprotected heights or uncovered industrial machinery. . . . The work is limited to simple, routine, repetitive tasks. And the work should be low stress defined as no more than occasional changes in the work to be performed during the work setting. Now, would such a person be able to perform any of Ms. Lockhart's past work? (Tr. 66-67).

Based on the hypothetical limitations, the VE found that the individual would be unable to perform Plaintiff's past relevant work, but could perform the light, unskilled work of a counter clerk (1,000 positions in the State of Michigan) and gate guard (1,000) (Tr. 68-69). The VE testified that if the same individual were additionally limited to walking or standing for four, rather than six, hours each day and no more than occasional pushing, pulling, fingering, feeling, and handling, the above job findings would not change (Tr. 69-71). In response to questioning by Plaintiff's attorney, the VE stated that the need to be off task for 20 percent of the day due to tiredness and medication side effects would preclude all work

---

at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

(Tr. 72-73).

### D.  The ALJ's Decision

Citing the medical records, ALJ Kleber determined that Plaintiff experienced the severe impairments of "fibromyalgia, degenerative disc disease of the lumbar spine, [CTS], and obesity" but that the none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20, 22).  The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [L]ift or carry up to 10 pounds.  The work can require her to stand or walk up to four hours of an eight-hour workday and to sit for up to four hours of an eight-hour workday, provided she is able to change position at will.  The [work] can only occasionally require climbing stairs or ramps, but not ladders or scaffolds.  The work can only occasionally require balancing, stooping, kneeling, crouching or crawling.  The work can only occasionally require repetitive hand movements or fine fingering with either upper extremity. Her work cannot involve commercial driving, or exposure to hazards such as unprotected heights or uncovered industrial machinery.  The work is limited to simple, routine, repetitive tasks.  The work is low stress, defined as work that is routine and predictable, involving no more than occasional changes in the work to be performed or in the work setting (Tr. 23).

Citing the VE's job testimony, the ALJ found that while Plaintiff was unable to perform any of her past jobs, she could work as a counter clerk or gate guard (Tr. 28, 30).

The ALJ discounted Plaintiff's allegations of disabling limitation, noting that her medical treatment had been conservative (Tr. 25).  She noted that Plaintiff experienced some relief from hot showers, medication, and using a stationary bike (Tr. 25).  The ALJ noted that "the relatively weak medical evidence" undermined the disability claim (Tr. 26).

-8-

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  SSR 12-2p

Plaintiff argues that the ALJ's finding that fibromyalgia ("FM") did not medically equal any listed impairment is unsupported by a medical opinion. *Plaintiff's Brief,* 7-10.  She contends that the ALJ failed to consider whether the condition of FM medically equaled Listing 14.09 (inflammatory arthritis). *Id.* at 3-10.

At Step Three of the administrative sequence, a claimant meeting or medically equaling "the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414,

2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4) (iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.' " *Id.* (citing 20 C.F.R. § 404.1525(a)).

FM is not a listed impairment. SSR12-2p, TITLES II AND XVI: EVALUATION OF FIBROMYALGIA, 2012 WL 3104869, *6 (July 25, 2012). However, disability resulting from FM can be established by showing that the condition equals a listed impairment or "medically equals a listing in combination with at least one other medically determinable impairment." *Id.* In contrast to a finding that a condition does not meet a listing, an "equivalency" finding must be supported by opinion evidence. "[W]hile an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings." *Stratton v. Astrue*, 987 F.Supp.2d 135, 2012 WL 1852084, *12 (D.N.H.2012) (citing SSR 96–6p, 1996 WL 374180, *3) ("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge ... must be received into the record as expert opinion evidence and given appropriate weight"). "This is presumably because making an equivalency finding requires difficult medical judgments as to the severity of a claimant's ailments, judgments that are greatly assisted by consulting an expert."

-11-

*Stratton*, at *12.

Plaintiff's argument that the equivalency determination is not supported by a medical opinion is incorrect. The ALJ's finding that FM did not equal a listing is supported by Dr. Ramona Minnis, M.D.'s review of the evidence and affirmance of an October, 2012 determination made by a non-medical reviewing source concluding that Plaintiff did not medically equal any listing[2] (Tr. 76-84, 315).

Plaintiff's overlapping contention that the ALJ erred by failing to consider whether FM equaled Listing 14.09 is based on the following passage from SSR 12-2p:

FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

The argument that the ALJ erred by failing to discuss whether Plaintiff met Listing 14.09D fails for multiple reasons. First, SSR 12-2p does not require the ALJ to consider whether Plaintiff met Listing 14.09D. Second, the facts of this case indicate that the Listing is inapplicable to Plaintiff's professed symptoms and the medical evidence. Under Listing 14.09D, disability as a result of inflammatory arthritis is established by "various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features combined with repeated

---

[2]Notably, the non-medical source report adopted by Dr. Minnis references the diagnosis of FM (Tr. 76-84).

manifestations" with "severe fatigue, fever, malaise, or involuntary weight loss" and marked limitation in activities of daily living, social functioning, or "completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § § 14.00, 14.09D.

None of the medical evidence suggests that Plaintiff experienced severe fatigue, fever, malaise, or involuntary weight loss, much less marked limitation in daily living, social functioning, or concentration. She reported gaining, not losing weight since the alleged onset of disability (Tr. 56-57). While she alleged sleep disturbances required her to take four naps every day due to medication side effects (Tr. 59), the record shows that she declined multiple recommendations to consult with a sleep specialist (Tr. 261, 264). The records indicate that Plaintiff did not experience joint swelling or deformity (Tr. 231, 316).

Even assuming that she met the threshold requirements of Listing 14.09, Plaintiff cannot show marked limitations in any domain of functioning. The medical records show that she was able to perform daily activities independently, did not allege problems in social functioning, and consistently appeared fully oriented. While Plaintiff is correct that FM in some instances may equal Listing 14.09D, the current record shows little if any evidence supporting an equivalency finding. As such, the ALJ was not required to discuss Listing 14.09D or even consider it. *See Bondy v. Comm'r of Soc. Sec.,* 2015 WL 1530435, at *20 (E.D. Mich. Mar. 31, 2015). "[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'"

-13-

*Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. September 8, 2014)(*citing Sheeks v. Comm'r of Soc. Sec.*, 544 Fed.Appx. 639, 641 (6th Cir.2013)).

Second, the ALJ's finding that the condition of FM did not meet a listing is well supported and articulated. Citing SSR 12-2p, the ALJ noted that no listing existed for FM, but reasonably "relied upon the listing sections most directly relevant given the signs and symptoms" the treating sources attributed to FM (Tr. 22). Given that Plaintiff alleged disability as a result of cervical and lumbar spinal problems, the ALJ did not err by considering whether symptoms of FM equaled Listing 1.04 or 1.02 (spine and joint dysfunction respectively) instead of Listing 14.09D (Tr. 22-23). Plaintiff does not dispute that her condition did not meet either of those Listings. Because the Step Three conclusions are supported by substantial evidence and well explained, remand on this basis is not warranted.

### B. Obesity

Plaintiff argues that the ALJ did not consider the effects of obesity on her work abilities. *Plaintiff's Brief* at 10-12. She points out that at one point, she had a BMI of over 40 which merits additional scrutiny under SSR 02-01p. *Id.* at 10-11; 2002 WL 34686281, *8.

SSR 02–1p classifies individuals with a Body Mass Index ("BMI") greater to or equal to 30.0 as "obese." When a claimant is found to be obese, the Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional

abilities. SSR 02–1p.  However, when determining the impact upon an individual's ability to function, SSR 02–1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Sec*., 359 Fed. Appx. 574, 577 (6th Cir.2009)(citation and internal quotation marks omitted).

Plaintiff's argument that the ALJ did not consider the effects of obesity or the BMI of over 40 is not well taken.  The ALJ provided an adequate discussion of Plaintiff's obesity, noting that at a recent appointment, she had a BMI of 39.93 and claimed at the hearing that she had a BMI of 42.05 (Tr. 21-22, 52).   The ALJ noted elsewhere that she considered obesity in determining that Plaintiff could perform a limited range of light work, and later stated that she considered the impact of obesity on Plaintiff's "ability to perform routine movement and necessary physical activity within the work environment" (Tr. 26).  Despite experiencing obesity, the ALJ noted that imaging studies of the lower extremities had been unremarkable (Tr. 24-25).  She noted that the imaging studies of the spine showed at most mild abnormalities (Tr. 25).  She observed that Plaintiff demonstrated full strength in all extremities and a normal gait (Tr. 25).  Because the ALJ adequately considered obesity in crafting the RFC, Plaintiff's request for remand on this basis should be denied.

### C.  Credibility

Plaintiff argues third that the ALJ's credibility determination was not well supported. *Plaintiff's Brief* at 12-17.  Specifically, she contends that the unremarkable imaging studies

cited by the ALJ in support of the determination do not undermine the allegations of limitation due to FM. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186,*2 (1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [3]

"[S]ubjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones v. Commissioner*, 336 F.3d 469, 475 (6th Cir. 2003)(citing *Young v. Secretary of HHS*, 925 F.2d 146, 150-51 (6th

---

[3]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Cir. 1990)).   When assessing the Claimant's alleged impairments, the "ALJ may properly consider the credibility of a claimant when making a determination of disability." *Id*. 476 (*citing Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997)).   An ALJ's credibility determination is entitled to great weight, but it must be supported by substantial evidence. *Id*. at 531.   "[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

The ALJ devoted over three pages to discussing her reasons for discounting Plaintiff's allegations of disability (Tr. 24-28).   Admittedly, she did not divide her rationale into subsections separating the reasons for discounting the alleged spinal limitations from those of FM.   However, the determination as a whole provides ample support for rejecting Plaintiff's alleged degree of limitation resulting from FM.

The ALJ noted that Plaintiff's allegation of muscle weakness was undermined by the May, 2012 through June, 2013 observations of normal muscle tone and more significantly, full strength in all extremities (Tr. 25).   The ALJ noted that Plaintiff exhibited a normal gait and did not require the use of a cane (Tr. 25).   She cited July, 2012 treating notes stating that Plaintiff did not experience tenderness of the fingers, wrists, or elbows (Tr. 25).   She cited August and October, 2012 records showing that no swelling of the fingers, wrists, or elbows and a full range of neck, shoulder, and elbow motion (Tr. 25).   The ALJ reasonably noted

-17-

that Plaintiff claim of disabling FM was also undermined by her failure to fill a prescription for the condition for over two months (Tr. 25, 261).

My own review of the record supports the ALJ's determination. Plaintiff reported to emergency room personnel in February, 2012 she went to bed feeling fine and did not have an explanation for the sudden onset of back pain (Tr. 216). However, after applying for Worker's Compensation, Plaintiff reported eight months later that the emergency room visit was precipitated by a work-related incident (Tr. 317). Later in October, 2012, Dr. Jilani noted that although he had been treating Plaintiff since May, 2012, she had not previously mentioned that "her symptoms [were] related to the work related injury" (Tr. 325). He noted that a recent examination by a "second opinion" had not resulted in a disability opinion (Tr. 325). Because substantial evidence supports the ALJ's credibility determination, a remand on this basis is not appropriate. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (*citing Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989)(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

-18-

### D.  The Treating Physicians' Opinions

Finally, Plaintiff takes issue with the ALJ's analysis of Drs. Jilani and Patel's opinions. *Plaintiff's Brief* at 17-21.  She faults the ALJ for crediting only the portions of Dr. Jilani's findings that support a non-disability conclusion. *Plaintiff's Brief* at 17-18.  As to Dr. Patel, Plaintiff argues that the ALJ did not provide good reasons for not according controlling weight to the treating physician's June, 2013 opinion. *Id.* at 18-21.

### 1.  The Treating Physician Rule

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

-19-

The failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson,* 378 F.3d at 544–546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

## 2.  Dr. Jilani

The ALJ's review of Dr. Jilani's findings do not provide grounds for remand.  The ALJ accorded great weight to Dr. Jilani's May through September, 2012 finding that Plaintiff was unable to to return to her job (Tr. 26, 28).  The ALJ noted that her finding that Plaintiff was unable to perform her past relevant work was based in large part on Dr. Jilani's findings (Tr. 26, 28).  She also accorded great weight to Dr. Jilani's June, 2013 work-related opinion that Plaintiff should avoid "pushing, pulling, walking long distances," and work affected by medication side effects (Tr. 26).  The ALJ noted that Dr. Jilani's assessment supported the finding that Plaintiff had the "ability to engage in sustained work-related activities" (Tr. 26).

Plaintiff argues that the ALJ erroneously gave only "some weight" to portions of Dr. Jilani's September and October, 2012 and June, 2013 findings.  *Plaintiff's Brief* at 18 (*citing*

Tr. 26-27).  He faults the ALJ for discounting Dr. Jilani's findings to the extent that they credited Plaintiff's claims of disabling pain.  However, in support of her finding that Dr. Jilani overly relied on Plaintiff's subjective complaints, the ALJ noted (as discussed earlier in the administrative opinion) that "good reasons" existed "for questioning the reliability" of Plaintiff's claims (Tr. 27).  While the ALJ acknowledged that Plaintiff experienced some degree of limitation as a result of FM, she reasonably found that the condition was not disabling.  As discussed above, she cited treating records showing a good range of motion, no joint abnormalities, full strength in all extremities, good grip strength, and normal muscle tone (Tr. 24-25).  As such, the ALJ's partial adoption of Dr. Jilani's opinion should remain undisturbed.

### 3.  Dr. Patel

The ALJ's rejection of Dr. Patel's June, 2013 work-related assessment is likewise well supported.  Contrary to Plaintiff's claim, the ALJ provided multiple good reasons for rejecting the treating opinion.   The ALJ noted first that the opinion was unsupported by "clinical and laboratory abnormalities . . ." (Tr. 27).  Plaintiff criticizes the ALJ's reasoning on the basis that FM cannot be diagnosed with conventional laboratory techniques.  However, the ALJ's  "clinical and laboratory abnormalities" remark appears to refer to the allegations of spinal cord disorders which she correctly found were generally unsupported by the imaging studies.   However, the ALJ adequately discounted Dr. Patel's opinion of disability resulting from FM as well.   First, she acknowledged the FM diagnosis by

-21-

including it among the Step Two impairments.   However, in discounting Dr. Patel's disability opinion she noted that the treating records, including evidence of full muscle strength, a normal gait, no acute distress, and the absence of joint swelling, did not strongly support a finding that the condition *disabled* Plaintiff from all work. *See   Jones v. Commissioner of Social Sec.,* 2015 WL 5749687, *5 (W.D.Mich. September 30, 2015)(ALJ did not err in discounting treating opinion of disability resulting from FM where the plaintiff "retained full muscle strength, had no focal deficits and no swollen joints, was in no acute distress, and had a normal gait").

Likewise, the ALJ permissibly rejected Dr. Patel's finding that Plaintiff experienced "flare-ups"  three times a week lasting for between two to three days (Tr. 27).  The ALJ correctly noted that none of the records showed that Plaintiff experienced "flair-ups" (Tr. 27) and indeed, Dr. Jilani's observations on multiple occasions between June, 2012 and June, 2013 that Plaintiff did not appear to be in discomfort undermines Dr. Patel's finding that Plaintiff experienced "flare-ups" at least six days out of seven each week.  It is unlikely that in numerous visits in the course of one  year, none of the treating sources witnessed symptoms of a "flare-up" even once.

Finally, Plaintiff faults the ALJ for "escap[ing]" the treating physician rule by discounting Dr. Patel's opinion on the basis that the "ultimate issue of disability is reserved to the Commissioner." *Plaintiff's Brief* at 19 (*citing* Tr. 27; 20 C.F.R. 1527(e)).  However, it is well settled that the administrative fact-finder is solely responsible for determining

whether the claimant meets the requirements for disability under social security disability benefits law. *See Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir.2007)(citing 20 § 404.1527(d)(1))("no 'special significance' will be given to opinions of disability, even if they come from a treating physician"). The ALJ's reliance on the "ultimate issue" rule, accompanied by above-discussed "good reasons" for discounting Dr. Patel's opinion, does not provide grounds for remand. *Bass* at 511-512.

Accordingly, I conclude that the determination that Plaintiff was not disabled from *all* work is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed. *Mullen v. Bowen*, *supra.*

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment [Dock. #17] be GRANTED and that Plaintiff's motion [Dock. #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within

the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 29, 2015




## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record
on December 29, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-24-